**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PRANAB VARADAKAR, individually and on
behalf of others similarly situated,

                                    Plaintiffs,

            -against-

TANDOORI RESTAURANT CORP. (D/B/A
Indi-Q Restaurant, JAY PATEL and BHARAT
PATEL,

                                    Defendants.

Civil Case No. 1:21-cv-

**COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff Pranab Varadakar ("Plaintiff" or "Mr. Varadakar"), individually and on behalf

of others similarly situated, by and through his attorneys, The Boyd Law Group, PLLC, upon

their knowledge and belief, and as against Tandoori Restaurant Corp. (d/b/a Indi-Q Restaurant)

("Tandoori" or the "Restaurant"), Jay Patel ("J. Patel) and Bharat Patel ("B. Patel") (collectively,

"Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiff is former employee of Defendants Indi-Q, J. Patel and B. Patel.

2.      Defendants own, operate, and control two Indian restaurants under the names

"Indi-Q Restaurant," located at 61 Old Route 22, Armonk, New York, 10504, and "Tandoori:

Taste of India," located at 163 N Main Street, Port Chester, New York, 10573.

3.      Upon information and belief, these two restaurants are owned and operated by

Tandoori Restaurant Corp. a New York domestic busines corporation with its principal place of

business located at 61 Old Route 22, Armonk, New York, 10504.

4.      Upon information and belief, individual defendants B. Patel and J. Patel, currently

serve or served as owners, managers, principals, or agents of Indi-Q, and, through this business

entity, operate the two restaurants as a joint or unified enterprise.

5.      Plaintiff was employed as a curry chef at the restaurant located at 61 Old Route 22, Armonk, New York, 10504.

6.      At all times relevant to this Complaint, Plaintiff worked for Defendants without appropriate minimum wage compensation for hours worked, and without federal and state-mandated overtime compensation.

7.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff and other employees to work without providing routine and accurate wage compensation required by federal and state law and regulations.

8.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, and paid a flat weekly rate to all employees, regardless of the actual hours worked, including overtime hours.

9.      At all times relevant to this Complaint, Plaintiff worked for Defendants without federal and state-mandated employment records and paperwork required for proper income tax withholding and filing.

10.     At all times relevant to this Complaint, Defendants deducted and withheld employee wages and earned tips without express authorization by said employees, in violation of state labor laws.

11.     Plaintiff now brings this action for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190, *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

12.     Plaintiff alleges that Defendants unlawfully withheld his and other employees' wages pursuant to NYLL § 193.

13.     Plaintiff alleges that Defendants failed to provide him and other employees with annual wage notices pursuant to the New York Wage Theft Prevention Act, NYLL § 195.

14.     Plaintiff alleges that Defendants failed to him and other employees with the spread of hours premium pursuant to NYCRR 142-2.8.

15.     Plaintiff alleges that Defendants retaliated against him for complaining about Defendants' wage violations pursuant to 29 U.S.C. § 215(a)(3).

16.     Plaintiff alleges that Defendants retaliated against him for complaining about Defendants' wage violations pursuant to NYLL § 215.

## JURISDICTION AND VENUE

17.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) over Plaintiffs' claims pursuant to the Fair Labor Standards Act and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two Indian restaurants located in this district. Further, Plaintiff was employed by Defendants in this district.

## PARTIES

*Plaintiff*

19.      Plaintiff Pranab Varadakar ("Plaintiff" or "Mr. Varadakar") is an adult male of Indian descent who at all times relevant herein resided in Westchester County, New York.

20.     Plaintiff was employed by Defendants at "Indi-Q Restaurant" (The Restaurant), located at 61 Old Route 22, Armonk, New York, 10504, beginning in or about December 2019

through his retaliatory termination which took place on or about November 15, 2020.

*Defendants*

21.     Defendant Tandoori Restaurant Corp. is a New York domestic busines corporation with its principal place of business located at 61 Old Route 22, Armonk, New York, 10504.

22.     Defendant Tandoori at all relevant times engaged in interstate commerce.

23.     At all relevant times, Defendants owned, operated, or controlled two Indian restaurants under the names "Indi-Q Restaurant", located at 61 Old Route 22, Armonk, New York, 10504, and "Tandoori: Taste of India", located at 163 N Main Street, Port Chester, New York, 10573.

24.      Defendants Bharat Patel and Jay Patel, father and son respectively, are individuals engaging (or who were engaged) in business in this judicial district during the relevant time period. They are sued jointly and severally herein in their capacity as owner, officer and/or agent of the Restaurant.

25.      Defendants possess operational control over the Restaurant, an ownership interest in the Restaurant, and control significant functions of the Restaurant.

26.     Defendants determine the wages and compensation of the employees of the Restaurant, including Plaintiff, establish the schedules of the employees, maintain employee records, and have the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Employers*

27.     Defendants operated two Indian restaurants within Westchester County, New York.

28.      Defendants J. Patel and B. Patel possess operational control over the Restaurant,

possess ownership interests in the Restaurant, and control significant functions of the Restaurant.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

30.     Defendants possessed substantial control over Plaintiff's working conditions and over the policies and practices with respect to the employment and compensation of Plaintiff.

31.     Defendants jointly employed Plaintiff and other similarly situated employees and are their employers within the meaning of 29 U.S.C. § 201, *et seq*. and the NYLL.

32.     In the alternative, Defendants constitute a single employer of Plaintiff and other similarly situated employees as joint owners and operators of the Restaurants.

33.     At all relevant times, Defendants were Plaintiff's and other similarly situated employees' employers within the meaning of the FLSA and NYLL. Defendants had the power to hire and fire employees, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for the Plaintiff's services.

34.     In all relevant years, Indi-Q had a gross annual volume of sales not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.     In addition, upon information and belief, Defendants and/or Indi-Q were directly engaged in interstate commerce. As an example, numerous goods that were used in the Restaurant on a daily basis are produced outside the state of New York.

***Plaintiff Pranab Varadakar***

36.     Plaintiff was employed by Defendants as a curry chef beginning in or about December 2019.

37.     When Plaintiff was recruited for his position by J. Patel, he was promised that he would have the title of Executive Chef and that the Defendants would provide living

accommodations for Plaintiff locally in Armonk, New York.

38.     However, Plaintiff was given the title of Curry Chef and the living quarters provided for by Defendants consisted of illegally converted office space in the same building as the Tandoori: Taste of India restaurant in Port Chester, New York.

39.     Plaintiff was forced to live in an open floorspace whereby he and up to five (5) or six (6) other Restaurant employees lived in cubicle areas on inflatable mattresses and shared a single bathroom.

40.     Plaintiff regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York, during the course of his employment for the Defendants.

41.     From approximately December 2019 until on or about November 15, 2020, Plaintiff worked at the Restaurant six (6) days a week for nine (9) hour shifts, each shift containing a two (2) hour afternoon break (in total, approximately forty-five (45) hours a week, before overtime shifts).

42.     At all times relevant to this Complaint, Defendants paid Plaintiff his wages in cash or cash-payable checks.

43.     Throughout Plaintiff's employment, Defendants paid Plaintiff a flat weekly salary of $1,250.00.

44.     Plaintiff's pay did not vary to account for the number of hours that he actually worked.

45.     For example, when Defendants required Plaintiff to work any amount past his scheduled departure time, they did not pay him any more for the additional time Plaintiff worked.

46.     At all times relevant to this Complaint, Defendants did not provide any necessary

paperwork to Plaintiff regarding tax withholdings or other deductions.

47.     Upon information and belief, Defendants did not take tax withholdings from Plaintiff's and all other similarly situated employees' wages.

48.     Upon information and belief, Defendants engaged in a practice whereby they falsely included certain relatives as employees for payroll tax purposes in order to reconcile their financial records and tax filings.

49.     Defendants have never offered Plaintiff overtime pay, despite the multiple occasions wherein the Plaintiff worked over forty (40) hour weeks, as stipulated by FLSA § 206(a).

50.     At all times relevant to this Complaint, Plaintiff was not required to keep track of his time, nor, to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked or those of all other similarly situated employees.

51.     On multiple occasions, Plaintiff received reduced payment amounts on his weekly salary, or received late and off-schedule payment as did other similarly situated employees.

52.     At all times relevant to this Complaint, no notification, either in the form of posted notices or other means, was ever given to Plaintiff and all other similarly situated employees regarding overtime and wages under the FLSA and NYLL.

53.     At all times relevant to this Complaint, Defendants did not provide Plaintiff and all other similarly situated employees an accurate statement of their wages in the Plaintiff's primary language, as required by NYLL § 195(3).

54.     At all times relevant to this Complaint, Defendants did not give any notice to Plaintiff and all other similarly situated employees of their rate of pay, employer's regular pay

day, and such other information as required by NYLL § 195(1).

***Defendants' General Employment Practices***

55.     Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and NYLL by, *inter alia*, not providing Plaintiff with accurate wages, overtime compensation, spread of hours pay and proper wage notices and statements.

56.     Defendants' payment practices resulted in Plaintiff receiving insufficient paychecks, lack of statutory overtime and spread of hours pay, as well as paychecks arriving late or not at all.

57.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets, payroll records and tax deduction accountings.

58.     Defendants paid Plaintiff and all other similarly situated employees their wages off-the-books, often in cash of personalized checks, to avoid additional significant tax liability on their business.

59.     Defendants also had a consistent pattern and practice of voiding customer dinner bills which were paid in cash to continue to perpetrate misreporting of the Restaurant's income taxes and reporting, simply keeping the cash payments but reversing out and cancelling those transactions.

60.     Upon information and belief, these practices were part of a much broader tax theft and fraud being perpetuated by Defendants to avoid the business's tax liability and falsify their true income on their tax returns.

61.     Defendants additionally failed to post at the workplace, or otherwise provide to employees, including Plaintiff, the required postings or notices to employees regarding the

applicable wage and hour requirements of the FLSA and NYLL.

62.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff worked, and to avoid paying Plaintiff properly for all hours worked.

63.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant financial damage to the Plaintiff and all other similarly situated employees.

64.     Defendants failed to provide the Plaintiff and all other similarly situated employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195(3).

65.     Defendants failed to provide Plaintiff and all other similarly situated employees, at the time of their hiring and subsequent changes in their rate of pay, a statement in their primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §

195(1).

66.     Despite the fact that Plaintiff and all other similarly situated employees worked shifts that began at approximately 11:00 a.m. and finished at or about 9:30 p.m., on occasions when the restaurant was busy, they were also required to work until 10:30 p.m.

67.     Despite this shift schedule, Defendants failed to pay the spread of hours premium pay pursuant to NYCRR 142-2.8.

68.     Defendants also illegally collected and retained all customer tips which were left for the Restaurant hospitality and service workers and staff, in violation of state and federal law amounting to blatant wage theft.

69.     To make matters worse, during the Covid-19 Coronavirus Global Pandemic (or the "Pandemic"), Defendants did not follow New York State Health Department guidance, and failed to disinfect the workplace or provide for proper sanitation, protective equipment or procedures for the Restaurant's employees.

70.     In spite of the Pandemic restrictions upon businesses and dining, Indi-Q's business remained open during the year 2020, shifting the majority of its business to take-out and delivery orders from Armonk, New York and the surrounding community.

71.     On one occasion, Plaintiff learned that a fellow employee-chef who had been absent sick from work for several weeks, had actually passed away due to illness from COVID-19.

72.     At no time did Defendants inform Plaintiff or his coworkers about this individual manager being infected, falling ill or passing and took no remediative steps to quarantine the Restaurant or its staff as a result of this infection, provide proper disinfection of the premises and workplace, or testing for other employees who had been in close contact with this deceased employee.

73.     The Restaurant closed for only a few days instead of the fourteen (14) day quarantine minimum that was required by law.

74.     Moreover, shortly thereafter, J. Patel contracted the Coronavirus but only was absent from the workplace for a day or two, and then returned to the Restaurant and continued interfacing with employees, customers and take-out and delivery orders.

75.     Plaintiff raised concerns on multiple occasions with the propriety of failing to implement health and safety measure following the contraction of the virus by the chef manager and J. Patel.

76.     These blatant health and safety failures placed both the Restaurant's employees and clients at significant risk of infection and spread of Covid-19 from the two affected persons who contracted it.

77.     In or about September 2020, after having raised numerous prior complaints to J. Patel and B. Patel regarding the improper payment methods, including their failure to make necessary tax withholdings from Plaintiff's pay and to provide Plaintiff with an appropriate wage statement and pay stub, Plaintiff sought out assistance from attorneys.

78.     As a result of these consultations, on or about September 24, 2020, Plaintiff's counsel sent a letter (the "September 24 Letter") to Defendants informing them of their flagrantly violating conduct and resultant legal liabilities for their pattern of practice of violation federal and state wage and hour laws.

79.     Shortly thereafter, counsel for the Defendants, Robert Byrne, Esq. ("Defendants' Counsel") responded to the September 24 Letter and counsel for Plaintiff and Defendants engaged in a settlement dialogue in the attempt to reach an amicable resolution of Plaintiff's claims.

80.     During the weeks that passed, Defendants' Counsel repeatedly assured Plaintiff's

counsel that he had instructed his clients as to the legal liability which would accrue should Defendants take any retaliatory action against Plaintiff for his protected activity in opposing their unlawful wage and hour practices under the FLSA and NYLL.

81.    Notwithstanding these instructions, Defendants began a campaign of retaliation against Plaintiff, instructing other employees not to speak with Plaintiff and leaving falsified customer reviews on online platforms in order to denigrate the quality of work which Plaintiff performed as curry chef.

82.    Finally, on or about November 15, 2020, Plaintiff objected to the Restaurant's fulfilling of a customer order that specifically requested a vegan meal.  Plaintiff knew that the curry that was prepared for this order was not vegan and in fact contained daily products.

83.    Plaintiff objected to falsely providing this order to a customer who clearly had requested that their meal be vegan, yet Defendants intended to provide the customer with a non-vegan meal, nonetheless.

84.    As a result of Plaintiff's objections, J. Patel became enraged and hurled a series of insults and aggressive language at Plaintiff, terminating his employment, ejecting him from the Restaurant's premises and refusing to provide him with his accrued and earned weekly paycheck.

85.    In order to obtain his paycheck, Plaintiff contacted the North Castle Police Department who investigated the dispute and directed Defendants to provide Plaintiff with his paycheck, which J. Patel reluctantly did.

86.    Since that time, Plaintiff has had his employment terminated, and was threatened by J. Patel that he would "blackball" Plaintiff from other employment opportunities in the Greater New York Tri-State area.

## FLSA COLLECTIVE ACTION CLAIMS

87.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including cooks, chefs, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, waiters, bussers and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Class").

88.     Plaintiffs bring their FLSA overtime, minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

89.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. Further, Plaintiff and FLSA Class Plaintiffs were subject to Defendants' willful failure and refusal to pay wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Class Plaintiffs.

90.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and

willfully failing to keep records under the FLSA.

91.     The claims of Plaintiff stated herein are substantially similar to those of the other hourly similarly situated hourly employees.

92.     Plaintiff was able to observe directly and to discuss with his coworkers that the policies and practices of failing to pay minimum wage, failing to pay overtime wage, failing to pay spread of hours premium, failure to give statutory wage statements and notices were common among all FLSA Class members who were hourly workers at the Defendants' restaurants.

93.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Class Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Class Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS UNDER NEW YORK LAW**

94.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including cooks, food preparers, dishwashers, cashiers, hosts/hostesses, porters, bartenders, barbacks, waiters, bussers and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "NYLL Class Period").

95.     All said persons, including Plaintiff, are referred to herein as the "Class."  The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are

readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

96.     The claims of Plaintiffs stated herein are substantially similar to those of the other hourly similarly situated hourly employees.  The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

97.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) wages for all hours worked due to time shaving, (iii) failing to provide proper wage statements per requirements of the New York Labor Law, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

98.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

99.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

100.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions

provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

## FIRST CAUSE OF ACTION
**(Violations of the Minimum Wage and Overtime Provisions of the FLSA – All Defendants)**

101.    Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

102.    At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the FLSA, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff and all other similarly situated employees, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

103.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

104.    Defendants failed to pay Plaintiff and all other similarly situated employees for their overtime work at the applicable rate, in violation of FLSA § 206(a).

105.    Defendants, in paying Plaintiff and all other similarly situated employees a flat weekly rate despite variations in hours worked and a workweek in excess of forty (40) hours was in violation of FLSA § 206(a).

106.    Defendants' failure to pay Plaintiff and all other similarly situated employees at the applicable minimum hourly rate was willful within the meaning of FLSA § 255(a).

107.    As a result of these unlawful actions, Plaintiff and all other similarly situated employees were damaged in an amount, not presently ascertainable and to be determined a full trial merits but believed to be in excess of $250,000 as well as liquidated damages, attorney's fees, costs and interest.

## SECOND CAUSE OF ACTION
### (Violations of the Minimum Wage and Overtime Provisions of the NYLL – All Defendants)

108.     Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

109.     At all times relevant to this action, Defendants were Plaintiff's and all other similarly situated employees' employers within the meaning of the NYLL §§ 2 and 651. Defendants had the power to hire and fire Plaintiff and all other similarly situated employees, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

110.      An employer who fails to pay overtime, shorts employees' hours, and fails to provide notice of employment documents or maintain employment records is in violation of federal and state legislation under the NYLL.

111.     Defendants' failure to pay Plaintiff at the minimum wage rate was willful within the meaning of NYLL § 663.

112.     As a result of these unlawful actions, Plaintiff and all other similarly situated employees were damaged in an amount, not presently ascertainable and to be determined a full trial merits but believed to be in excess of $250,000 as well as liquidated damages, attorney's fees, costs and interest.

## THIRD CAUSE OF ACTION
### (Violation of the Wage Notice Requirements of New York Labor Law
### NYLL § 195(1) – All Defendants)

113.     Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

114.      Defendants failed to provide Plaintiff and all other similarly situated employees with a written notice, in their primary language, containing: the rate or rates of pay and basis

thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging

allowances; the regular pay day designated by the employer; the name of the employer; any

"doing business as" names used by the employer; the physical address of the employer's main

office or principal place of business, and a mailing address if different; and the telephone number

of the employer, as required by NYLL § 195(1).

115.     Defendants never provided Plaintiff and all other similarly situated employees

with a wage notice within ten business days of the first day of their employment or thereafter,

and Defendants are therefore liable to Plaintiff damages of fifty dollars for each workday that the

violations occurred or continued to occur, but not to exceed a total of five thousand dollars,

together with costs and reasonable attorney's fees, as outlined by NYLL § 198(1)(b).

116.     Defendants are liable to Plaintiffs and all other similarly situated employees in

the amount of $5,000.00 for each employee, together with costs and attorneys' fees for violation

of this statute.

### FOURTH CAUSE OF ACTION
**(Violation of the Wage Statement Provisions of New York Labor Law – All Defendants)**

117.     Plaintiff repeats and realleges all of the above preceding paragraphs above as

though fully set forth herein.

118.     With each payment of wages, Defendants failed to provide Plaintiff and all other

similarly situated employees with an accurate statement listing each of the following: the dates of

work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift,

day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any,

claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the

overtime rate or rates of pay; the number of regular hours worked; and the number of overtime

hours worked, as required by NYLL § 195(3).

119.    Defendants are liable to Plaintiff and all other similarly situated employees in the

amount of $5,000.00 for each employee, together with costs and attorneys' fees for violation of

this statute.

## FIFTH CAUSE OF ACTION
### (Failure to Pay Spread of Hours Premium Wages – All Defendants)

120.    Plaintiff repeats and realleges all of the above preceding paragraphs above as

though fully set forth herein.

121.    At all relevant times, Plaintiff and all other similarly situated employees were

employed by the Defendants within the meaning of the NYLL §§ 2 and 651.

122.    Plaintiffs and all other similarly situated employees often worked in excess of ten

(10) hours for Defendants per day after they were ordered to work the majority of their time

inside Defendants' Restaurant in Armonk, New York.

123.    However, Defendants never paid Plaintiffs and all other similarly situated

employees their spread of hours premium for the days that they worked in excess of ten (10)

hours a day.

124.    Due to the Defendants' violations, Plaintiff and all other similarly situated

employees are entitled to recover from Defendants their spread of hours premium for each day

that they worked in excess of ten (10) hours, liquidated damages, damages for unreasonably

delayed payment of wages, their reasonable attorneys' fees, and costs and disbursements of the

action pursuant to NYLL §§ 663(1) *et. al.* and 12 NYCRR § 142-2.18.

## SIXTH CAUSE OF ACTION
**(Retaliation as to Plaintiff Pursuant to the NYLL – All Defendants)**

125.    Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

126.    Upon the discovery of the Defendants' unlawful practice not providing employees with overtime pay, spread of hours premium pay, wage statements and notices, Plaintiff personally and through counsel made verbal and written complaints to Defendants.

127.    Upon learning about Plaintiff's complaints, Defendants changed Plaintiff's terms of employment, intimidated him verbally and terminated his employment as a result of his protected activity under the NYLL.

128.    Due to Defendants' illegal retaliation, Plaintiff is entitled to all appropriate relief, including, but not limited to, a civil penalty of no less than $1,000, payment of lost and withheld compensation, liquidated damages, interest, and his reasonable attorneys' fees pursuant to NYLL §§ 215 and 663(1).

## SEVENTH CAUSE OF ACTION
**(Retaliation as to Plaintiff Pursuant to the FLSA – All Defendants**

129.    Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

130.    Upon the discovery of the Defendants' unlawful practice of not providing employees with overtime pay, Plaintiff personally and through counsel made verbal and written complaints to Defendants.

131.    Upon learning about Plaintiff's complaints, Defendants changed Plaintiff's terms of employment, intimidated him verbally and terminated his employment as a result of his protected activity under the FLSA, 29 U.S.C. § 215(a)(3).

132.    Due to Defendants' illegal retaliation, Plaintiff is entitled to all appropriate relief, including, but not limited to, payment of lost and withheld compensation, liquidated damages, interest, and his reasonable attorneys' fees pursuant to 29 U.S.C. § 215(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants by:

(a)    Declaring that Defendants violated the overtime wage payment and minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff;

(b)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' compensation, hours, wages, and any deductions or credits taken against wages;

(c)    Declaring that Defendants' violations of the provisions of the FLSA were willful;

(d)    Awarding Plaintiff damages for the amount of unpaid overtime wages and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)    Awarding Plaintiff liquidated damages in an amount equal to 100% of their damages for the amount of unpaid wages owed after the charging of flat weekly payments and unpaid overtime, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)    Declaring that Defendants violated the minimum wage, overtime wage provisions of, spread of hours premium and rules and orders promulgated under, the NYLL as to the Plaintiff;

(g)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff's compensation, hours, wages and any deductions or credits

taken against wages;

(h)     Declaring that Defendants' violations of the provisions of the NYLL were willful;

(i)     Awarding Plaintiff damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b), 198(1-d);

(j)     Awarding Plaintiff pre-judgment and post-judgment interest as applicable;

(k)     Awarding Plaintiff the legal expenses incurred in this action, including costs and attorneys' fees;

(l)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(m)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: June 10, 2021
        New York, New York

**THE BOYD LAW GROUP, PLLC**

By: */s/ Stephen M. Bourtin*
Stephen M. Bourtin, Esq. (SB-6458)
Patrick J. Boyd, Esq. (PB-0921)
250 Park Avenue, Seventh Floor
New York, New York 10018
Tel: (212) 867-3675
Fax: (212) 867-5765
sbourtin@theboydlawgroup.com
pboyd@theboydlawgroup.com
*Attorneys for Plaintiff*